UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IUOE LOCAL 324 RETIREMENT TRUST
FUND, ET AL.,

                Plaintiffs,                Civil Case No. 17-13921
                                              Honorable Linda V. Parker

v.

LGC GLOBAL FM, LLC (f/k/a Lakeshore
Rickman JV, LLC) and AVINASH RACHMALE,

                Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED WITNESS LIST (ECF NO. 64) AND DENYING DEFENDANTS' MOTIONS IN LIMINE (ECF NO. 65) AND TO EXTEND TIME TO FILE MOTION IN LIMINE (ECF NO. 73)

This is an action to recover fringe benefit contributions allegedly owed to Plaintiffs, which are pension and welfare benefit trust funds established and administered pursuant to Section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186, and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. The matter is presently before the Court to address the following motions:

- Plaintiffs' Motion for Leave to File an Amended Witness List (ECF No. 64);
- Defendants' Motion in Limine (ECF No. 65); and
- Defendants' Motion to Extend Time to File Motion in Limine (ECF No. 73).

## **Background**

On December 5, 2017, Plaintiffs initiated this lawsuit against LGC Global,

FM, LLC ("LGC") and Avinash Rachmale ("Mr. Rachmale") (collectively

"Defendants").  (*See* ECF No. 1.)  Plaintiffs claim that LGC owes unpaid

contributions to the funds pursuant to a collective bargaining agreement ("CBA").

This CBA covered work that LGC's operating engineers performed at a number of

Detroit Public Schools ("DPS") pursuant to LGC's contract to perform operations

management at the schools.  Plaintiffs seek to hold Mr. Rachmale personally liable

for the unpaid contributions as an ERISA fiduciary.

Defendants initially did not respond to Plaintiffs' Complaint and clerk's

entries of default were entered against them on January 25, 2018.  (ECF Nos. 8, 9.)

Only after Plaintiffs filed a motion for default judgment on February 23, 2018

(ECF No. 12), did counsel for Defendants enter an appearance (ECF No. 14).  The

parties then stipulated to the withdrawal of Plaintiffs' motion for default judgment

and the clerk's entries of default were vacated.  (ECF No. 16.)

The Court thereafter conducted an initial scheduling conference and entered

its first scheduling order in this matter.  (ECF No. 20.)  The scheduling order was

then amended two times upon the parties' requests (ECF Nos. 24, 29), with the

Second Amended Scheduling Order setting an October 18, 2018 deadline for

witness lists and a December 12, 2018 discovery deadline.  Plaintiffs and

Defendants filed their witness lists on July 19 and 20, 2018, respectively.  (ECF Nos. 25, 26.)

Approximately one month after the discovery deadline, on January 11, 2019, Plaintiffs filed a motion to file an amended complaint.  (ECF No. 34.)  The purpose of the amendment was to add a count of "liability as a single employer" against Defendants.  (*Id.* at Pg ID 173.)

Specifically, Plaintiffs maintain that LGC and Tiskono and Associate, LLC ("Tiskono") are alter ego/single employers and that Defendants therefore owe contributions for certain work Tiskono performed at DPS pursuant to a subcontract with LGC.  Plaintiffs indicated in their motion to amend that operating engineers working for LGC were transferred to Tiskono in January 2016, to perform the exact work they previously had been doing for LGC at DPS.  (*Id.* ¶ 7.)  Plaintiffs further stated that the employees remained on Tiskono's payroll until at least December 31, 2016, and that during this period, LGC gave Tiskono the money needed to cover its payroll for those employees.  (*Id.* ¶¶ 8, 9.)  Plaintiffs claim that LGC made decisions for Tiskono and controlled its management, and that Tiskono had no operating engineers before this point.  (*Id.* ¶ 10.)

In seeking to amend their Complaint, Plaintiffs represented that they would not need additional discovery to pursue their amended claim but that they would not object if Defendants needed a period of discovery as a result of the amendment.

(*Id.* ¶ 25.)  On the same date that they filed their motion to amend, Plaintiffs requested an emergency extension of the dispositive motion deadline, which had passed a month earlier.  (ECF No. 33.)

On January 11, 2019, the Court granted Plaintiffs' motion to extend the dispositive motion deadline and Plaintiffs filed a motion for partial summary judgment on February 11, 2019.  (ECF No. 36.)  In their motion, Plaintiffs sought *inter alia* a judgment against Defendants for the amounts set forth in audit reports for the periods October 2015 to January 2016 and April through June 2018, which were attached as exhibits to the motion.  Plaintiffs also asked the Court to order LGC to open its books and records for Plaintiffs to conduct an audit to determine the amount of unpaid contributions due to Plaintiffs for all unaudited periods beginning January 2016.  (*Id.* at Pg ID 271.)  In response to Plaintiffs' motion, Defendants asked for time to conduct discovery under Federal Rule of Civil Procedure 56(d) with respect to the audit reports attached to Plaintiffs' motion, as Defendants had not previously received those reports.  (ECF No. 50 at Pg ID 394.)

In the interim, the deadline for Defendants to respond to Plaintiffs' motion to file an amended complaint passed without Defendants responding to the motion. On April 15, 2019, the Court granted Plaintiffs' motion and Plaintiffs filed their Amended Complaint on April 19, 2019.  (ECF No. 43.)  In an Answer to the Amended Complaint filed May 3, 2019, Defendants denied Plaintiffs' allegations

concerning LGC's relationship with Tiskono and Tiskono's operating engineers. (ECF No. 44 at Pg ID 755-67.)

On September 27, 2019, the Court filed an opinion and order granting in part and denying in part Plaintiffs' motion for partial summary judgment. (ECF No. 50.) Over Defendants' objection, the Court granted Plaintiffs' request to conduct additional audits. (*Id*. at Pg ID 900-01.) The Court also extended discovery for an additional thirty days, but only to allow Defendants to pursue specific discovery related to the results of the audits attached to Plaintiffs' motion and for the parties to determine whether any of the amounts reflected in those reports as being due were among the contributions LGC paid pursuant to a March 2017 settlement agreement between the National Labor Relations Board and LGC, Tiskono, and other entities. (*Id*. at 901.) On October 7, 2019, the parties submitted, and the Court signed, a stipulated order extending this limited discovery an additional thirty days. (ECF No. 53.)

On December 6, 2019, the Court entered a Third Amended Scheduling Order, setting a final pretrial conference for March 25, 2020, and a trial date of April 14, 2020. (ECF No. 55.) A week later, on December 13, 2019, Plaintiffs filed a motion for limited scope discovery. (ECF No. 56.) Plaintiffs sought additional discovery to address Defendants' contention that they are not liable under the CBA for Tiskono's failure to pay the required fringe benefit

5

contributions.  (*Id.* ¶ 13.)  The Court denied Plaintiffs' motion on January 30, 2020, finding no good cause for Plaintiffs' delay in seeking the additional discovery. (ECF No. 63.)  The Court relied on the fact that Plaintiffs deposed Tiskono's owner, Tiskono Crawford, on December 28, 2018, at which time they would have been aware of at least a potential alter ego issue concerning LGC and Tiskono.  (*Id.* at Pg ID 1021-22.)

Within days of the Court's decision, Plaintiffs filed their pending motion to amend their witness list to add Mr. Crawford as a witness.  (ECF No. 64.)  The motion has been fully briefed.  (ECF Nos. 66, 70.)  Defendants have filed a motion in limine asking the Court to preclude Plaintiffs from using the NLRB Settlement Agreement as evidence that LGC and Tiskono are alter-egos, or that LGC is liable for the amounts claimed in this action.  (ECF No. 65.)  This motion has been fully briefed, as well.  (ECF Nos. 68, 69.)  Defendants also seek an extension of the deadline for filing motions in limine so that they may move to preclude Plaintiffs from offering at trial an audit of Tiskono, dated February 6, 2020.  (ECF No. 73.) The proposed motion in limine is attached to Defendants' motion to extend time. (ECF No. 73-2.)  Full briefing has been completed with respect to Defendants' request to extend the motion in limine deadline.  (ECF Nos. 74, 75.)

Due to the COVID-19 pandemic, the Court has adjourned the previously scheduled final pretrial conference and trial dates in this matter.  New dates have not been set.  However, those dates most likely will be several months from now.

## Plaintiffs' Motion for Leave to File an Amended Witness List

### The Parties' Arguments

Plaintiffs seek leave to file an amended witness list, to add Mr. Crawford as a witness.  Plaintiffs deposed Mr. Crawford on December 28, 2018.  They contend that his testimony is relevant to their alter-ego/single employer claim and that Defendants will not suffer prejudice if Plaintiffs are allowed to call Mr. Crawford as a witness because he was deposed and Defendants had adequate notice of his involvement in this matter.  Plaintiffs also point out that their initial witness list identified "[a]ny and all witnesses whose names and relevance are obtained through discovery of this matter[,]" "[a]ny and all rebuttal witnesses[,]" and "reserve[d] the right to amend [their witness list] as this matter progresses."  (*See* Pls.' Witness List ¶¶ 16-17, 19, ECF No. 25 at Pg ID 118.)

Defendants respond that Plaintiffs have not established good cause for their delay in seeking to add Mr. Crawford as a witness and point out that this is not the first time Plaintiffs have failed to act diligently in this action.  Defendants also claim that they will suffer prejudice if Plaintiffs are allowed to now add Mr. Crawford as a witness.

7

Plaintiffs reply that they are only seeking "to specifically identify one of Defendants' subcontractors who was initially included on both parties' witness lists by category."  Plaintiffs contend that good cause is met if the party acted diligently in attempting to meet the scheduling order and the opposing party will not suffer prejudice.  Plaintiffs maintain that they "were diligent in attempting to complete discovery within the deadlines.  However, Defendants failed to disclose critical facts which prevented Plaintiffs from ascertaining the relevance of [Mr.] Crawford."

Both sides focus on the "good cause" standard in Federal Rule of Civil Procedure 16 when making their arguments.

### Applicable Law and Analysis

To decide Plaintiffs' motion, however, the Court must consider the interplay of Federal Rules of Civil Procedure 16 and 37, as well as Eastern District of Michigan Local Rule 16.2.  The Court finds Rule 37 and Local Rule 16.2 more applicable to the relief Plaintiffs seek.

Rule 16 of the Federal Rules of Civil Procedure provides that "[a] schedule may be modified *only* for *good cause* and with the judge's consent."  Fed. R. Civ. 16(b)(4) (emphasis added).  "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."  *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625

8

(6th Cir. 2002) (quotation marks and citations omitted).  Possible prejudice to the opposing party also is relevant.  *Id.* (citation omitted).

Were Plaintiffs seeking only to extend the deadline to amend their witness list, the Court would have to deny their motion as they have not acted diligently. Plaintiffs deposed Mr. Crawford well over a year before they filed their pending motion.  As Plaintiffs represented in their previous motion to amend their complaint, his testimony alerted them to the alleged alter ego/single employer relationship between LGC and Tiskono.  What Plaintiffs actually are seeking in their motion, however, is leave to call Mr. Crawford as a witness at trial, even though he was not on their timely filed witness list.

Eastern District of Michigan Local Rule 16.2 provides, in relevant part: "Except as permitted by the Court for good cause a party may not list a witness [in a final pretrial order] *unless* the witness was included on a witness list submitted under a prior order *or* has been deposed."  E.D. Mich. LR 16.2(b)(8) (emphasis added).  Thus, pursuant to this rule, a witness may be included in a final pretrial order, even if not listed on a previously filed witness list, if the Court finds good cause *or* the witness was deposed.[1]  Rule 37 of the Federal Rules of Civil Procedure provides that when a party fails to disclose a witness, "the party is not

---

[1] While Defendants complain that Plaintiffs deposed Mr. Crawford after the discovery deadline, they never objected to the deposition previously.

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless* the failure was substantially justified *or* is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added).  Courts consider the following factors to determine whether a failure to disclose is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (citations omitted). While Plaintiffs' previous nondisclosure may not be "substantially justified," the Court finds it to be "harmless."

First, Plaintiffs' desire to call Mr. Crawford as a witness cannot be a surprise to Defendants.  Plaintiffs referred at length to Mr. Crawford's deposition testimony to support the amendment of its pleadings to add an alter ego/single employer claim.  Second, in light of the continuing pandemic, it will be several months before this matter is likely to go to trial.  Thus, to the extent there is any surprise, Defendants can cure it by seeking leave of court to take whatever additional discovery they find necessary.  For the same reason, allowing Mr. Crawford to testify will not disrupt the trial.  Fourth, the evidence appears crucial to Plaintiffs' alter ego/single employer claim.  Finally, while Plaintiffs offer no explanation for their failure to identify Mr. Crawford as a witness earlier, the cause appears more

likely to be the result of negligence or oversight rather than "underhanded gamesmanship."  *See Howe*, 801 F.3d at 749.

For these reasons, the Court will permit Plaintiffs to include Mr. Crawford in their list of witnesses.  If Defendants require additional discovery as a result of this decision, they shall seek a stipulation from Plaintiffs to do so and, if Plaintiffs fail to concur, inform the Court via motion within fourteen (14) days.

## Defendants' Motion in Limine

### The parties' arguments

Defendants' motion in limine concerns the NLRB Settlement Agreement. Defendants indicate they may offer the agreement at trial to set off any amounts found to be due to Plaintiff by the amounts LGC has paid and is obligated to pay under it.  Defendants, however, want to preclude Plaintiffs from using the NLRB Settlement Agreement at trial as evidence of any substantive admission by LGC— such as that LGC and Tiskono are alter-egos or that LGC is liable for the amounts claimed in the lawsuit.

Plaintiffs respond that Federal Rule of Evidence 408 prohibits Defendants from using the settlement agreement for the purpose Defendants propose. Plaintiffs nevertheless indicate that they have no opposition to Defendants introducing the agreement at trial *provided* Plaintiffs may offer it for their intended purposes.

11

Plaintiffs also argue that while Rule 408 may preclude them from using the NLRB Settlement Agreement "as absolute evidence of the liability of LGC in this matter," they may use it "as evidence of the relationship between LGC and Tiskono." (Resp. Br. at 6, ECF No. 68 at Pg ID 1161.) Plaintiffs contend that allowing them to introduce the agreement for this purpose does not undermine the public policy that Rule 408 is intended to serve: encouraging the compromise and settlement of disputes. Lastly, Plaintiffs claim that Rule 408 permits the use of a settlement agreement to prove witness bias or prejudice, as well as credibility. According to Plaintiffs, they should be able to use the NLRB Settlement Agreement—which they believe provides evidence of the alter-ego relationship between LGC and Tiskono—to discredit LGC's potential argument "that Mr. Crawford's testimony is biased because he wants to pin all of his liability on LGC." (Resp. at 10, ECF No. 68 at Pg ID 1165.) Plaintiffs maintain that the settlement agreement would discredit this argument "because LGC is already paying a substantial portion of Tiskono's potential liability, therefore he has no reason to be biased against LGC." (*Id.*)

### Applicable Law & Analysis

Federal Rule of Evidence 408 reads:

> (a) **Prohibited Uses**. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a

12

contradiction:

(1) furnishing, promising, or offering--or accepting,
promising to accept, or offering to accept--a valuable
consideration in compromising or attempting to
compromise the claim; and

(2) conduct or a statement made during compromise
negotiations about the claim--except when offered in a
criminal case and when the negotiations related to a
claim by a public office in the exercise of its regulatory,
investigative, or enforcement authority.

**(b) Exceptions.** The court may admit this evidence for
another purpose, such as proving a witness's bias or
prejudice, negating a contention of undue delay, or
proving an effort to obstruct a criminal investigation or
prosecution.

"This prohibition applies equally to settlement agreements between a defendant
and a third party and between a plaintiff and a third-party." *Portugues-Santana v.
Rekomdiv Int'l*, 657 F.3d 56, 63 (1st Cir. 2011) (citing *McInnis v. A.M.F., Inc.*, 765
F.2d 240, 246 (1st Cir. 1985); *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d
161, 166 (5th Cir. 1983)); *see also Banker v. Nighswander, Martin & Mitchell*, 37
F.3d 866, 872 (2d Cir. 1994) (noting that the plaintiff could not rely upon his
settlement amount with third parties when calculating malpractice damages against
his former attorney because they are inadmissible under Rule 408).

Defendants' reason for offering the settlement agreement during trial—to
offset the amount due to Plaintiffs—is expressly prohibited by Rule 408.
*Portugues-Santana*, 657 F.3d at 63 (citing *McHann*, 713 F.2d at 165-66).  Rule

408 bars settlement agreements to prove "the amount of a claim that was disputed as to validity *or amount* …." Fed. R. Evid. 408(1) (emphasis added). Thus in *McHann*, the Fifth Circuit vacated a jury verdict, concluding that the district court erred in allowing a settlement agreement into evidence, which was offered to offset the amount due to the plaintiff. 713 F.2d at 166. Relying on *McHann*, the First Circuit in *Portugues-Santana* held that the district court did not err in precluding the defendants at trial from introducing evidence of a settlement agreement between the plaintiff and a third party to support arguments in favor of reducing the damages award. *Portugues-Santana*, 657 F.3d at 63. The cases cited by Defendants do not undermine these holdings.

In *In re Enron Corporation Securities, Derivative & ERISA Litigation*, 623 F. Supp. 2d 798 (S.D. Tex. 2009), the court applied Texas law, not federal law, to decide whether the settlement agreement was discoverable and admissible. *Id*. at 839. *In re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012), addressed only whether a settlement negotiations privilege exists to prevent the production of negotiation documents. *Id.* Finally, the court concluded that the settlement agreements were admissible in *Westchester Specialty Insurance Services, Inc. v. U.S. Fire Insurance Company*, 119 F.3d 1505 (11th Cir. 1997), but only because of a factual dispute regarding the terms of the agreements. *Id*. at 1512-13 ("The settlement agreements were not offered for the impermissible purpose of proving the invalidity of a claim

14

or its amount, but rather for the permissible purpose of resolving a factual dispute about the meaning of the settlement agreements' terms.").  Notably, in *Westchester Specialty*, the Eleventh Circuit indicated that, "to avoid any possible prejudice" from the introduction of a settlement agreement, commentators recommend "a bifurcated trial, with the liability and damages aspects of the case split[.]"  *Id.* at 1512 n.14 (citations omitted).

This recommendation is consistent with what the First and Fifth Circuits have described to be the proper procedure for offsetting damages by the amount paid pursuant to a previous settlement.  *Portugues-Santana*, 657 F.3d at 63 (quoting *McHann*, 713 F.3d at 166 & n.10) ("Instead of allowing the settlement into evidence, the court should have examined the settlement agreement itself and 'deduct[ed] the amount that McHann ha[d] already received from any judgment.'").

Rule 408 also prohibits Plaintiffs from introducing the NLRB Settlement Agreement into evidence for the purposes they state.  There is no real difference between Plaintiffs' claimed reason for introducing the agreement—providing evidence of the relationship between LGC and Tiskono—and "the validity" of Plaintiffs' claim that Tiskono is an alter-ego of LGC.  Rule 408 does allow the admission of a settlement "for []other purpose[s], such as proving a witness's bias or prejudice[.]"  Fed. R. Evid. 408.  However, Plaintiffs do not seek to use the

15

settlement agreement to show Mr. Crawford's bias or prejudice; rather, they hope the agreement will bolster his credibility.  The Court need not decide whether bolstering the credibility of a witness falls within Rule 408(b)'s exceptions, as it cannot be accomplished through Plaintiffs' proposed method.

Plaintiffs explain how they intend to use the NLRB Settlement Agreement to bolster Mr. Crawford's credibility:

> … Mr. Crawford's testimony provides evidence of the alter-ego relationship between Tiskono and LGC.  LGC may argue that Mr. Crawford's testimony is biased because he wants to pin all of his liability on LGC. Allowing Plaintiffs to introduce the NLRB settlement would discredit this argument, because LGC is already paying a substantial portion of Tiskono's potential liability, therefore he has no reason to be biased against LGC.

(Resp. at 10, ECF No. 68 at Pg ID 1165.)  As Defendants point out in reply, however, the agreement does not show that LGC is paying Tiskono's liability. Rather, under the agreement, Tiskono and LGC assumed joint and several liability for the assessed amounts.  (*See* Reply at 5 n.5, ECF No. 69 at Pg ID 1189; *see also* Settlement Agreement at 2, ECF No. 68-1 at Pg ID 1170.)

For these reasons, the Court concludes that Rule 408 precludes Plaintiffs and Defendants from introducing the Settlement Agreement for their proffered reasons. To the extent Defendants are found liable for fringe benefits contributions, they

may then argue to the Court why the damages found at trial should be offset by any amounts paid under the agreement.

## Defendants' Motion to Extend Time to File a Motion in Limine

### Parties' Arguments

In a Third Amended Scheduling Order, entered December 6, 2019, the Court set a February 7, 2020 deadline for the parties to file motions in limine. (ECF No. 55.) In a motion filed March 30, 2020, Defendants request an extension of that deadline so they may file a motion in limine to exclude an audit report Defendants disclosed to Defendants on February 6, 2020. (Mot., ECF No. 73.) The audit is of Tiskono's records, which Plaintiffs represent was completed only on February 6, 2020.

Defendants maintain that this was the first time they learned about the Tiskono audit and that "Plaintiffs never before identified damages relating to Tiskono …." (*Id.* ¶ 9, Pg ID 1364.) Plaintiffs respond that they previously produced a March 21, 2019 audit of Tiskono (*see id.* ¶ 9, Pg ID 1482; *see also* Audit, ECF No. 56-3 at Pg ID 960-70), and that "it is disingenuous for Defendants to argue that they were unaware of damages sought for th[e] time period [when Tiskono was acting as an alter-ego of LGC] …" (Resp. ¶ 11, ECF No. 74 at Pg ID 1483). According to Plaintiffs, the February 6, 2020 audit report is a revision of the March 2019 report. (*Id.* ¶ 5, Pg ID 1482.) The revision corrected an error

regarding the billing of healthcare contributions, which had been made by

Plaintiffs' auditor, Wayne Kless, and were discovered during Mr. Kless'

November 26, 2019 deposition.  (Resp. Br. at 5, ECF No. 74 at Pg ID 1489.)

Plaintiffs contend that Defendants cannot establish "good cause" for failing

to file their motion in limine earlier.  Plaintiffs further argue that it would be futile

to allow Defendants to file their proposed motion in limine, as Defendants have

known for some time that Plaintiffs are seeking unpaid contributions from Tiskono

and had prepared an audit calculating those damages.

### Applicable Law & Analysis

Even if Defendants' failure to timely file their motion in limine is excusable

under the applicable standard,[2] the motion is futile.  Defendants argue in their

proposed motion in limine that Plaintiffs never supplemented their initial

---

[2] In their briefs, the parties each cite Federal Rules of Civil Procedure 6(b) and
16(b)(4), apparently uncertain themselves as to which rule applies to Defendants'
request to extend time to file their motion in limine.  Yet these rules provide
varying standards when a party is seeking to act after the time to do so has expired,
as is the case here.  *See* Fed. R. Civ. P. 6(b) (allowing for an extension of time
upon the showing of "excusable neglect" where the motion is filed after the period
expired); Fed. R. Civ. P. 16(b)(4) (allowing for a modification of the scheduling
order "for good cause and with the judge's consent.").  "Excusable neglect" is "a
somewhat elastic concept" and includes "inadvertence, mistake, or carelessness, as
well as … intervening circumstances beyond the party's control."  *Pioneer Inv.
Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388, 392 (1993) (internal
quotation marks and citation omitted).  As set forth earlier in this decision, "good
cause" is measured primarily by "the moving party's diligence in attempting to
meet [the deadline]."  *Inge*, 281 F.3d at 625.

disclosures to provide Defendants with the basis for their damages calculations

related to Tiskono, as required under Federal Rule of Civil Procedure 26.  As a

sanction for Plaintiffs' failure to comply with Rule 26, Defendants maintain that

the Tiskono audit should be excluded from evidence pursuant to Federal Rule of

Civil Procedure 37.

Rule 26 requires parties to provide initial disclosures, Fed. R. Civ. P.

26(a)(1), and to supplement those disclosures pursuant to Rule 26(e), Fed. R. Civ.

P. 26(a)(2)(E).  Rule 26(e) reads in relevant part:

> (1) **In General.** A party who has made a disclosure under
> Rule 26(a)--or who has responded to an interrogatory,
> request for production, or request for admission--must
> supplement or correct its disclosure or response:
> (A) in a timely manner *if* the party learns that in some
> material respect the disclosure or response is incomplete
> or incorrect, *and* if the additional or corrective
> information has not otherwise been made known to the
> other parties during the discovery process or in writing;
> or
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e) (emphasis added).  According to the plain language of Rule

26(e), a party need not supplement its Rule 26(a) disclosures *if* the information has

"otherwise been made known to the other parties during the discovery process or in

writing …."  Fed. R. Civ. P. 26(e)(1)(A).

In their briefs, Defendants never dispute Plaintiffs' assertion that the March 21, 2019 Tiskono audit report was previously produced to Defendants.[3]  Plaintiffs explain that the February 6, 2020 audit report simply corrected the errors in the audit identified during the auditor's November 26, 2019 deposition.  The revised audit report was provided to Defendants in writing.  Plaintiffs, therefore, were not required to supplement their Rule 26(a) disclosures to identify it.  However, even if Plaintiffs were obligated to supplement their Rule 26(a) disclosures with the March 21, 2019 and/or February 6, 2020 audit reports, precluding Plaintiffs from using those documents at trial is not a proper sanction.

Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Plaintiffs were substantially justified in failing to provide the revised Tiskono audit report to Defendants prior to February 6, 2020.  The audit was only completed on that date.  Moreover, any failure by Defendants to timely provide the Tiskono audit reports to Defendants is harmless.

---

[3] Interestingly, Defendants completely ignore the March 21, 2019 Tiskono audit report in their briefs.

Defendants have been well aware for some time that Plaintiffs are seeking fringe contributions for work performed by LGC's covered employees as well as Tiskono's employees under an alter-ego/single employer theory.  Defendants also were aware, at least as of November 25, 2019, that Plaintiffs' auditor had performed an audit of Tiskono.  (Kless Dep. at 45, ECF No. 74-1 at Pg ID 1508.)  The audit also was attached as an exhibit to a December 13, 2019 motion filed by Plaintiffs.  (Audit, ECF No. 56-3.)  Moreover, the stipulated order this Court entered on March 23, 2018, setting aside the clerk's entries of default against Defendants, specifically required Defendants to produce records "from all entities (LGC Global FM, LLC, Lakeshore Rickman JV, LLC, Tiskono & Associates, LL, and Covenant Cleaning Services, LLC)" *to conduct an audit* for the period January 2015 through the present …."  (Stip. Order at 2, ECF No. 16 at Pg ID 92 (emphasis added).)

For these reasons, the Court concludes that Defendants' proposed motion in limine to exclude the Tiskono audit report is futile.  Therefore, the Court is denying Defendants' motion to extend time to file the motion in limine.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Leave to File an Amended Witness List (ECF No. 64) is **GRANTED**;

21

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine regarding the NLRB settlement (ECF No. 65) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' Motion to Extend Time to File Motion in Limine (ECF No. 73) is **DENIED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: November 2, 2020